IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRANDON GRAY,

     Plaintiff,

v.                                                                  Case No. 3:24-CV-02756-NJR

MASA MILLING, INC.,

     Defendant.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Brandon Gray brings this employment discrimination action against his former employer, Masa Milling, Inc. ("Masa"). Gray alleges that Masa terminated him because he requested to go on leave to address a health issue and because he raised concerns about food safety and hygiene issues at Masa's facility. Gray's second amended complaint ("SAC") advances claims of interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Counts I and II respectively), violation of the employee protections of the Food Safety Modernization Act ("FSMA"), 21 U.S.C. § 399d (Count III), and retaliatory termination against public policy under Illinois law (Count IV). (Doc. 19 (Sec. Am. Compl.)). Masa filed a motion to dismiss the SAC in its entirety. (Doc. 21). This motion is fully briefed and ripe for disposition.

### BACKGROUND

Masa produces food grade corn flour, which is used to make corn chips and tortillas. (Doc. 19 ¶ 17). It hired Gray as a Quality Supervisor on August 15, 2022. (*Id.*). Gray's duties included monitoring and maintaining quality standards in Masa's food

Page 1 of 16

production processes and documenting any "issues" that might trigger regulatory scrutiny by the Occupational Safety and Health Administration ("OSHA") and the Food and Drug Administration. (*Id.* ¶ 18).

From February to August 2024, Gray was working on a plan of action to eliminate "an ongoing issue related to 5 active insect infestations" at Masa's facility. (*Id.* ¶ 19). Gray documented these infestations and reported his findings to his superior, Monty Baker. (*Id.* ¶ 20). Baker was not "convince[d]" of Gray's findings and allegedly refused to address them. (*Id.* ¶¶ 20, 21). Gray had also identified and reported other hygiene and safety issues at the facility, including "caked product with active magots" around production machinery and "standing water harboring visible larvae," which, in his view, presented significant food safety issues. (*Id.* ¶ 22).

Around July 2024, Masa terminated its human resources manager and replaced them with one Taylor E. ("Taylor"). (*Id.* ¶ 23). Around that same time, Gray began attending regular doctor's visits to address severe abdominal pain he had been experiencing. (*Id.* ¶ 24). After several visits with his doctor, Gray was diagnosed with a "severe hernia" and told he needed surgery. (*Id.* ¶ 26). Indeed, Gray's hernia had advanced to a "late" and "severe" stage, which put him at risk of necrosis and tissue death. (*Id.* ¶¶ 28, 29). Also around July 2024, Gray spoke to Taylor about the need to take leave under the FMLA due to his "medical condition" and Taylor gave him some paperwork for his doctor to complete. (*Id.* ¶¶ 30-31). Gray's doctor estimated that he would need to be on leave in September or October 2024. (*Id.* ¶ 32).

On August 19, 2024, Gray met with Taylor to discuss his need to take FMLA leave

and to report the food safety issues he had identified. (*Id.* ¶ 33). The conversation quickly turned to food safety, and Gray explained that Baker had put up a "wall" and refused to authorize Gray's recommended steps to address the problems at the facility. (*Id.* ¶ 35). At some point during the conversation, Taylor stopped Gray and told him to raise these concerns with Baker. (*Id.* ¶ 36). When Gray told Taylor that he had already done so, Taylor invited Baker to join the conversation. (*Id.* ¶ 38).

In the meeting with Taylor and Baker, Gray again explained his concerns. (*Id.* ¶ 39). Baker "discounted" Gray's findings, however, and "ma[d]e [him] look crazy or completely incompetent." (*Id.* ¶ 40). Baker also expressed skepticism about whether he and Gray could continue working together. (*Id.* ¶ 42). Gray, believing he was in danger of being fired, threatened to retain counsel, at which point Taylor ended the meeting and sent him home. (*Id.* ¶¶ 43, 44). That evening, Baker sent Gray a text message directing him to show up to work the next morning for another meeting with him and Taylor. (*Id.* ¶ 47).

The next morning, August 20, 2024, Gray met with Baker, Taylor, and Masa's Operations Supervisor, Dale Sarginson. (*Id.* ¶¶ 49-51). The meeting was brief. Taylor handed Gray some papers and told him he was being terminated. (*Id.* ¶¶ 52-54). On December 31, 2024, Gray filed a complaint in this Court. (Doc. 1). After two amendments, Gray filed the SAC on May 12, 2025. (Doc. 19).

### LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d

635, 637 (7th Cir. 2012). The Court accepts as true the complaint's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013).

To survive a Rule 12(b)(6) motion, the plaintiff's allegations must support a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible where a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A reviewing court must "ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). This means that the plaintiff must "provide some specific facts to support the legal claims asserted in the complaint," and offer "enough details about the subject-matter of the case to present a story that holds together." *Bilek*, 8 F.4th at 586 (citation modified).

## DISCUSSION

1. <u>FMLA Interference and Retaliation (Counts I and II)</u>

The FMLA allows eligible employees to take up to 12 weeks of unpaid leave during any 12-month period to address qualifying health issues. *Lewis v. School Dist. #70,* 523 F.3d 730, 741 (7th Cir. 2008). Among other reasons, an employee is eligible for leave if she suffers from a "serious health condition that makes [her] unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). "After the period of qualified leave expires and the employee returns to work, she is entitled to be reinstated to her former position or to an equivalent position with the same benefits and terms of employment."

*Lewis*, 523 F.3d at 741.

To effectuate these requirements, "[e]mployers are prohibited from interfering with an employee's use or attempted use of FMLA leave." *Jones v. C & D Tech., Inc.*, 684 F.3d 673, 677 (7th Cir. 2012) (citing 29 U.S.C. § 2615(a)(1)). Similarly, employers are forbidden from retaliating against employees who invoke their rights under the FMLA — *i.e.*, an employer may not "discharge or in any other manner discriminate against" an employee who does so. 29 U.S.C. § 2615(a)(2); *see also Goelzer v. Sheboygan Cnty.*, 604 F.3d 987, 995 (7th Cir. 2010). The Seventh Circuit recognizes these prohibitions as independent theories of employer liability based on interference and retaliation respectively. *Juday v. FCA US LLC*, 57 F.4th 591, 595 (7th Cir. 2023).

Masa argues that both of Gray's FMLA claims are fatally defective because he has not alleged the existence of a "serious health condition" that entitled him to leave. Masa also contests the viability of Gray's interference claim (Count I) because he failed to allege that he gave sufficient notice of his intent to go on leave. And with respect to the retaliation claim (Count II), Masa argues that it cannot survive a motion to dismiss because the SAC fails to allege a causal connection between Gray's protected activity and his termination.

### a.   Interference

To state a claim of FMLA interference, an employee must allege that "'(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled.'"

Page 5 of 16

*Jones*, 684 F.3d at 677 (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 825 (7th Cir. 2011)). Masa contests the sufficiency of Gray's allegations with respect to the third and fourth elements of his prima facie case.

In Masa's view, Gray fails to allege his entitlement to FMLA leave because the SAC does not assert the existence of a "serious health condition." A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). A "serious health condition" must also render the employee "unable to perform the functions of [her] position" before she is entitled to FMLA leave. *Id.* § 2612(a)(1)(D); *Jones*, 684 F.3d at 677. Masa hones in on the incapacitation requirement, arguing that Gray fails to allege an inability to perform his work under section 2612(a)(1)(D).

But the SAC alleges that Gray began suffering severe abdominal pain around July 2024 and that he saw his doctor regularly as a result. After several visits, Gray was diagnosed with a "severe hernia" and told he needed surgery. Indeed, Gray's hernia had advanced to a "late" and "severe" stage, which put him at risk of necrosis and tissue death. Gray's doctor therefore estimated that he would need to go on leave for approximately one month in September or October 2024.

These allegations tell enough of "a story that holds together." *Bilek*, 8 F.4th at 586 (quotation omitted). Gray alleges an injury (a severe hernia), the need for continuing treatment (regular doctor's visits and surgery), and an inability to perform the functions of his job because he needed time to recover from surgery. With these allegations, Masa's

argument regarding the lack of incapacitation is unconvincing because "an employee who receives treatment for a serious health condition is automatically considered to be unable to perform the functions of her position." *Jones*, 684 F.3d at 677; *see also Goelzer*, 604 F.3d at 990-96 (eye and foot surgeries supported FMLA retaliation and interference claims). Gray has thus pled the existence of a "serious health condition" under sections 2611(11) and 2612(a)(1)(D). And, at this nascent stage of the case, this means he has demonstrated an entitlement to leave under the FMLA. Indeed, *none* of the Seventh Circuit cases Masa cites to support its argument that Gray failed to allege a "serious health condition" arose in the context of a motion to dismiss. *See Juday*, 57 F.4th at 595; *Ziccarelli v. Dart*, 35 F.4th 1079, 1090 (7th Cir. 2022); *Jones*, 684 F.3d at 678; *Goelzer*, 604 F.3d at 995-96; *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 588 (7th Cir. 2008); *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 495 (7th Cir. 1999). This further suggests the need for discovery to flesh out the seriousness of Gray's hernia diagnosis rather than disposing of the issue without further inquiry. Gray has thus sufficiently alleged his entitlement to FMLA leave.

Masa also contests the sufficiency of the allegations regarding its notice of Gray's need to take FMLA leave. This argument is more simply rejected because Gray alleged that he spoke with Taylor at least twice about his intention to take FMLA leave. The first conversation took place soon after his doctor recommended surgery to address his "severe hernia" around July 2024. Gray told Taylor about his "medical condition," and she gave him papers for his doctor to complete. The second conversation took place on August 19, 2024. Although the second conversation quickly turned to Gray's claims of

hygiene and safety issues at Masa's facility, the SAC nevertheless alleges that Gray raised his need for FMLA leave with Taylor a second time.

These allegations, abstract as they may be, permit a reasonable inference that Masa was on notice of Gray's health condition and his need to go on leave. Indeed, Taylor's provision of FMLA paperwork and her instruction that Gray's doctor complete it suggests she understood the nature of Gray's request. And Gray's attempt to discuss the issue with Taylor again on August 19 further suggests Masa's notice of his need for FMLA leave, even though that conversation eventually focused on Gray's concerns about food safety issues. These allegations may not be a model of clarity, but they are enough to survive a motion to dismiss. *See Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 726 (7th Cir. 2007) (employer must be "aware" that employee's condition may trigger FMLA responsibilities).

### b. Retaliation

"To prevail on a claim for retaliation in violation of the FMLA, a plaintiff must show that (1) he engaged in FMLA-protected activity; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the two." *Juday*, 57 F.4th at 596. A retaliation claim—unlike an interference claim—requires proof of a discriminatory intent. *Id.* But it is also well-established that "[t]o succeed on a retaliation claim, the plaintiff does not need to prove that retaliation was the *only* reason for her termination; she may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Goelzer*, 604 F.3d at 995 (emphasis in original, quotation marks omitted).

Masa argues that Gray's meeting with Baker and Taylor on August 19, 2024—not his request for FMLA leave—was the moving force behind his termination. In Masa's view, the SAC shows only that Gray spoke with Taylor about his need for FMLA leave in July 2024, and that his August 19 meeting with her (first without Baker and then with him present) did not address this issue. It also focuses on Gray's allegation that it became clear to him in the meeting with Taylor, Baker, and Sarginson on August 20, 2024, based on "what had occurred the day before," that he was being fired. Thus, so Masa's argument goes, Gray causally attributes his termination to his reported concerns about food safety and hygiene issues, not to his request for FMLA leave.

That is one way of seeing things. But adopting this interpretation now would turn the *Twombly/Iqbal* standard on its head. The Court is compelled to view the allegations in the light most favorable to Gray, not Masa. And with this interpretative framework in mind, Gray's allegations permit a reasonable inference that his request for FMLA leave was at least part of the reason for his termination.

Masa correctly recognizes that the timing of an adverse employment action is competent evidence of causation. *Id.* at 989. In an employment setting, "[t]emporal proximity between protected activity and an adverse employment action can support an inference of causation between the two." *Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 634 (7th Cir. 2022). Here, the SAC alleges at least two conversations between Gray and Taylor where Gray's need for FMLA leave was discussed. These conversations happened within approximately one month of Gray's termination. There is, of course, no serious debate that Gray's request for FMLA leave qualified as protected activity. *Caskey*, 535 F.3d at 593.

Page 9 of 16

And where Gray was then fired only one day after he sought to raise the issue with Taylor a second time, the relevant allegations permit a reasonable inference of causation.

Even if one disregards Gray's conversation with Taylor on August 19, 2024 (as Masa does), the interval between Gray's request for FMLA leave in July 2024 and his termination on August 20 is not enough to negate the inferential force of timing here. It is true that the exact date of Gray's July meeting with Taylor is unclear. But Gray "started" seeing his doctor for his abdominal pain in July 2024. Only after "several appointments" was he diagnosed with a severe hernia. And only then did he approach Taylor about taking FMLA leave. These allegations suggest that Gray's meeting with Taylor took place in mid or late July 2024. This, in turn, means that the interval between Gray's protected activity in July 2024 and his August 20, 2024 termination was approximately one month, if not less. The Court acknowledges that this interpretation places a thumb on the scale in favor of Gray. But that is exactly the point of *Twombly* and *Iqbal*. And under this indulgent view of the SAC, the passage of approximately one month is not enough to warrant the dismissal of Gray's FMLA retaliation claim. *Cf. Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1459 (7th Cir. 1994) (four weeks between protected activity and adverse employment action supported inference of causation).

For these reasons, Counts I and II of the SAC survive Masa's motion to dismiss.

2.  <u>FSMA Violation (Count III)</u>

In Count III, Gray alleges a violation of the FSMA's employee protection requirements. These provisions state in relevant part that no entity engaged in the food production or handling business may discriminate against an employee who "provided,

caused to be provided, or is about to provide" to his employer or the government information concerning a violation of the FSMA's food safety standards or its associated regulations. 21 U.S.C. § 399d(a)(1). "A person who believes that he or she has been discharged or otherwise discriminated against by any person in violation of subsection (a) may, not later than 180 days after the date on which such violation occurs, file . . . a complaint with the Secretary of Labor . . . alleging such discharge or discrimination and identifying the person responsible for such act." *Id.* § 399d(b)(1). Then, once the administrative proceeding is sufficiently exhausted, federal courts may exercise jurisdiction over an employee's FSMA retaliation claim. 29 C.F.R. § 1987.114. The administrative filing requirement is thus a "jurisdictional prerequisite" to filing an FSMA retaliation action in court. *Marcus v. Barilla Am. NY, Inc.*, 14 F. Supp. 3d 108, 120 (W.D.N.Y. 2014); *see also Guile v. Durham Nephrology Assocs.*, No. 1:15cv1069, 2016 WL 375077, at *2 (M.D.N.C. Jan. 29, 2016) ("To obtain relief under Section 399d, an individual must first file a complaint with the Secretary of Labor . . . regarding the alleged retaliation.").

Masa contends that the Court is without jurisdiction to hear Gray's FSMA retaliation claim because he failed to strictly comply with the requirements of 29 C.F.R. § 1987.114, one of the FSMA's associated regulations. Section 1987.114(a) states, in relevant part, that district courts "will have jurisdiction" over FSMA retaliation claims either "(1) [w]ithin 90 days after [the employee] receiv[es] a written determination under § 1987.105(a) provided that there has been no final decision of the Secretary; or (2) [i]f there has been no final decision of the Secretary within 210 days of the filing of the

complaint." 29 C.F.R. § 1987.114(a). Subsection (c), for its part, provides that district courts "shall have jurisdiction to grant all relief necessary to make the employee whole" including reinstatement, back pay, special damages, litigation costs, and attorney's fees. *Id.* § 1987.114(c)(1)-(4). Finally, subsection (d) provides that "[w]ithin seven days after filing a complaint in federal court, a complainant must file with OSHA, the ALJ, or the ARB, depending on where the proceeding is pending, a copy of the file-stamped complaint." *Id.* § 1987.114(d). Masa's jurisdictional argument is based on Gray's failure to comply with subsection (d)'s post-filing requirement.

Gray filed his original complaint on December 31, 2024. (Doc. 1). He concedes that he did not submit a file-stamped copy of the complaint to OSHA within seven days of this date. But once this omission was brought to his attention, he promptly submitted a conforming copy to OSHA on February 24, 2025. (Doc. 19-1, p. 2). In Masa's view, this omission deprives the Court of jurisdiction under subsection 1987.114.

But subsection 1987.114(d) does not mention the Court's jurisdiction. Only subsections (a) and (c) do. Subsection (d) only appears to require notice to the administrative body that heard the employee's claim before she filed suit. Masa's argument suggests that although the Court may have had jurisdiction over Gray's FSMA retaliation claim at the time of filing, its jurisdiction was revoked once seven days passed and he failed to submit a copy of his complaint to the relevant administrative agency. Section 1987.114 by its terms does not compel this conclusion, nor has Masa offered any authority to support it. The Court is thus skeptical that a plaintiff's failure to strictly comply with the seven-day complaint submission requirement under subsection (d)

strips it of the jurisdiction that subsection (a) explicitly granted.

The Court has found only two cases that cite section 1987.114: *Birksza v. Whole Foods Mkt., Inc.*, No. 2:21-cv-10621, 2021 WL 5832783, at *2 (E.D. Mich. Oct. 13, 2021), and *Guile*, 2016 WL 375077, at *2. Neither supports Masa's position. Indeed, these cases do not even mention subsection (d). The Middle District of North Carolina found that under subsection (a), "if the Secretary does not issue a final decision within 210 days of the filing of the complaint, or within 90 days of receiving an initial written determination from the Secretary, the individual may bring an action in federal district court regarding the alleged retaliation." *Id.* The Court agrees with this interpretation of section 1987.114's jurisdictional grant. But it does not suggest the *negation* of jurisdiction when a plaintiff fails to submit a copy of his complaint to the administrative agency that previously reviewed his claims. So, Masa's argument that this Court is without jurisdiction to hear Gray's FSMA claim because of his failure to submit a copy of his complaint to OSHA within seven days of filing lacks authoritative support. And for that reason, the Court finds that it has jurisdiction to hear Gray's FSMA claim in Count III.

3.   Retaliatory Discharge (Count IV)

Masa's final argument targets Count IV of the SAC, wherein Gray asserts a claim of retaliatory discharge in violation of Illinois public policy. Masa contends that this claim is duplicative of Count III. The Court agrees.

Illinois recognizes the tort of retaliatory discharge in violation of public policy as a "limited and narrow cause of action." *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 875 (Ill. 1991). The tort is an "exception" to the general rule of at-will employment, and it is

available only when "necessary" to vindicate important public policy considerations that would otherwise be subverted. *Id.* at 876. Plaintiffs may pursue this cause of action only when "an employer could effectively frustrate a significant public policy by using its power of dismissal in a coercive manner." *Id.*

But "[t]he tort of retaliatory discharge was not intended to serve as a substitute means for enforcement of particular laws." *Stebbings v. Univ. of Chicago*, 726 N.E.2d 1136, 1141 (Ill. App. Ct. 2000). Thus, when a statute already makes an employee's firing illegal, a cause of action for retaliatory discharge is "superfluous." *Id.* And in such circumstances, "a court might even be obligated to dismiss the claim" due to the availability of an alternate statutory remedy. *Id.*

Here, Gray's retaliatory discharge claim is not "necessary" to vindicate the public policy considerations at play. He has brought a claim under the FSMA, wherein he accuses Masa of firing him, in part, for raising concerns about food safety and hygiene issues at its facility. His retaliatory discharge claim rests on the same theory of liability. Indeed, the SAC explains the basis of Gray's retaliatory discharge claim in Count IV as his reported "concerns to both his supervisor and HR manager about quality issues around the facility which included pest issues or infestations and live maggots." (Doc. 19 ¶ 92). The FSMA covers precisely these types of reports by employees as it seeks to ensure the safe "manufacture, processing, packing, transporting, distribution, reception, holding, or importation of food." 21 U.S.C. § 399d(a). And because Gray is advancing an FSMA retaliation claim in this action, his common law retaliatory discharge claim appears to be duplicative. *Cf. Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d

936, 945 (7th Cir. 2002) (allowing common law retaliatory discharge claim to proceed where it was "unclear" whether plaintiff met requirements for parallel federal cause of action).

The FSMA, as noted, offers an extensive remedial scheme to whistleblowing employees, including reinstatement, back pay, special damages, litigation costs, and attorney's fees. 29 C.F.R. § 1987.114(c)(1)-(4). Indeed, section 1987.114(c) expressly acknowledges the FSMA's goal to "make the employee whole" when she experiences an adverse employment action as a result of her protected activity. This strongly suggests that Gray's common law retaliatory discharge claim is impermissibly "superfluous." *Stebbings*, 726 N.E.2d at 1141; *see also Dohogne v. Terminal R.R. Assoc.*, No. 3:20-cv-01228, 2022 WL 2159294, at *5 (S.D. Ill. June 15, 2022) (dismissing common law retaliatory discharge claim where federal statute provided "precisely the sort of adequate, alternative remedy that would lead Illinois courts not to recognize . . . retaliatory discharge tort.") (citation modified).[1]

Accordingly, Count VI of the SAC will be dismissed.

## CONCLUSION

For these reasons, Defendant Masa Milling, Inc.'s Motion to Dismiss the Second Amended Complaint (Doc. 21) is **GRANTED in part** and **DENIED in part**. Count IV of the Second Amended Complaint is **DISMISSED**.

---

[1] Gray argues that his retaliatory discharge claim should survive because, unlike his FSMA claim, it allows him to recover punitive damages. But this argument appears in his brief unaccompanied by authoritative support. *See Pable v. City of Chicago Trans. Auth.*, 145 F.4th 712, 721 n.3 (7th Cir. 2025) (rejecting unsupported argument). Thus, and in light of the Illinois Supreme Court's narrow construction of common law retaliatory discharge claims, the Court declines to advance Count IV on that basis.

Counts I through III will proceed to discovery.

**IT IS SO ORDERED.**

**DATED:  March 24, 2026**

_____

**NANCY J. ROSENSTENGEL**
**United States District Judge**